**STATE of Iowa, Appellee,**

v.

**Guy E. RICH, Appellant.**

**No. 64925.**

Supreme Court of Iowa.

May 13, 1981.

Douglas F. Staskal, Appellate Defenders Office, for appellant.

Thomas J. Miller, Atty. Gen., Mark R. Schuling, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and SCHULTZ, JJ.

SCHULTZ, Justice.

On March 7, 1980, defendant, Guy Eugene Rich, was convicted of the following crimes: (1) kidnapping in the first degree in violation of section 710.2, The Code 1979;

(2) sexual abuse in the third degree in violation of section 709.4(1), The Code 1979; and (3) robbery in the second degree in violation of section 711.3, The Code 1979. Defendant appeals from his convictions of first-degree kidnapping and second-degree robbery. He alleges that the evidence presented at trial was insufficient to prove the requisite elements of either charge beyond a reasonable doubt, and that the trial court committed reversible error by overruling his motions for a directed verdict of acquittal on each charge. We find no merit in either of defendant's assignments of error and affirm his convictions.

The facts are not in dispute. On August 12, 1979, defendant began employment as a custodian at Crossroads Shopping Center in Waterloo. Defendant reported to work around 10:30 p. m. on September 1. At approximately 11:15 Cynthia Renolds, who had been working late, left Reunion, the casual clothing store she managed. She took the day's proceeds with her for the purpose of making a night deposit. The proceeds, which consisted of approximately $2000, of which $1000 was cash, were contained in a locked, zippered cloth bank bag inside a briefcase. Because of the late hour the shopping center's exit doors were locked, and Renolds had to summon a custodian to let her out of the building. Defendant responded to her call but was allegedly unable to unlock the usual exit door because the key was bent. He informed Renolds that another exit would have to be used.

En route to the alternate exit defendant paused to look into a men's restroom while Renolds continued walking. Defendant then grabbed Renolds from behind, held a sharp object against her back, and told her he had a knife and to do what she was told and she would not get hurt. He led Renolds back to the corridor to the men's restroom, a few yards away, where he forced her to lie down on her stomach and tied her hands behind her back. Defendant then took Renolds into the restroom and sexually abused her.

Thereafter, defendant and Renolds left the restroom. Renolds asked defendant if she could take her purse and briefcase, which had been left in the corridor, with her. He said no and kicked both objects into a small room beside the restroom.

Defendant then led Renolds around a portion of the shopping center, stopping at a stair landing, where he had her lie on her back, ripped her bra off, and tied her left leg to the bannister with her bra and her right leg to the bannister with a rag. Defendant left Renolds there, but he subsequently returned and had her get into a large three-wheeled trash container. Defendant then covered Renolds with trash. She encountered difficulty in breathing, however, because plastic trash bags had been placed against her face, and she asked defendant to remove them, which he did.

Defendant wheeled Renolds into the custodians' maintenance room and then into a small wooden utility shed within the maintenance room. Defendant left but returned a short time later and tied Renolds' feet and checked to make sure her hands were still tied. Defendant then closed the door to the utility shed and left again. Approximately ten minutes later Renolds heard footsteps in the maintenance room and what she thought to be the sound of a zipper and pounding.

Subsequently, defendant wheeled Renolds out of the maintenance room back into the mall area of the shopping center. He left the trash container near an escalator and walked away. Renolds, who had managed to work herself free of her restraints, tipped the trash container over and ran to Sutter's Mill. She pounded on the doors of the restaurant and screamed for help, but to no avail. Defendant assailed her, striking her on the cheek with his fist, and placed the chain portion of his retractable key chain tightly around her neck, which impaired her breathing and prevented her from screaming. After warning Renolds that if she did not shut up he would kill her, defendant removed the chain from her neck, placed her back in the trash container, and re-bound her hands and feet.

Defendant then wheeled Renolds outside toward a brick building adjoining the mall. Renolds once again was able to work free from her bindings, struggled with defendant, tipped the trash container over, and ran to a parked car, the occupant of which helped her contact the police.

Defendant was apprehended in Las Vegas, Nevada, at a gambling casino. He had in his possession $47.14, a five-dollar gambling token, a leisure suit, miscellaneous toiletry articles, and a small blue suitcase that he purchased in Nevada at a cost of approximately ten dollars.

■ At the conclusion of the State's evidence defendant unsuccessfully moved for a directed verdict on the ground of insufficiency of the evidence. Defendant's motion was sufficient to preserve error. *See State v. Holderness*, 293 N.W.2d 226, 229–30) (Iowa 1980) (motion need not be renewed at close of all evidence to preserve appeal); Iowa R.Crim.P. 18(10)(a).

■ In reviewing the propriety of a trial court's ruling on a motion for a directed verdict in a criminal case, this court views the evidence in a light most favorable to the State. All legitimate inferences that may reasonably be deducted therefrom will be accepted. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). All of the evidence must be considered when determining evidentiary sufficiency. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). A trial court should submit a charged crime to the jury and should not direct a verdict, and a refusal to direct a verdict will be upheld, if there is any substantial evidence in the record reasonably tending to support the charge. *State v. York*, 256 N.W.2d 922, 927 (Iowa 1977); *State v. Overstreet*, 243 N.W.2d 880, 884 (Iowa 1976). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson*, 288 N.W.2d at 339.

I. *Kidnapping.* The definition of kidnapping is contained in section 710.1, The Code 1979, which provides in pertinent part:

A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . .

(3) The intent to . . . subject the person to a sexual abuse.

. . . .

Section 710.2 defines first-degree kidnapping: "Kidnapping is kidnapping in the first degree when the person kidnapped, as a consequence of the kidnapping, . . . is intentionally subjected to torture or sexual abuse. . . . "

Defendant claims that the State failed to prove the necessary element of confinement or removal of the victim. He maintains that this requirement of the kidnapping statute is not met when the confinement or asportation is merely incidental to the commission of sexual abuse. Defendant asserts that the trend of modern case law is to limit the scope of kidnapping to "true" kidnapping situations and urges this court to do likewise because the penalty for first-degree kidnapping is severe, greatly exceeding the penalty for third-degree sexual abuse. The State contends that the issue is not the distance traveled but whether the victim was subjected to unlawful removal and confinement, and that the asportation in this case was greater than that necessary to commit the crime of sexual abuse. Although the question at issue here was raised in *State v. Holderness*, 301 N.W.2d 733, 739–40 (Iowa 1981), we found it unnecessary to reach the question because the confinement and removal in that case could not be considered incidental to the offense of sexual abuse.

It is not contested that some degree of confinement or removal of the victim is present in most cases of sexual abuse. Neither chapter 710 (kidnapping) nor chapter 709 (sexual abuse) of the Code define the terms "confines" or "removes." However, section 709.1(1) does require an act "done by

force or against the will" of the victim for one to be guilty of sexual abuse. At the request of defendant the trial court instructed the jury that the confinement or removal required for kidnapping must be "other than the confinement or removal incidental to the commitment [*sic*] of another crime." Defendant does not claim that the jury was misled by this instruction or by other instructions on kidnapping given by the trial court. Defendant contends that, on the basis of the evidence presented, the trial court should have instructed the jury to return a verdict of acquittal on the kidnapping charge.

Both parties rely on decisions of other states to support their respective positions. Even though the statutory definitions of kidnapping and the penalties for conviction of the crime vary greatly among the states, only a few general theories concerning the requirement of confinement or asportation have evolved.

The Arizona Supreme Court, in *State v. Jacobs*, 93 Ariz. 336, 341–42, 380 P.2d 998, 1002, *cert. denied*, 375 U.S. 46, 84 S.Ct. 158, 11 L.Ed.2d 108 (1963), held that a minimum distance of asportation is not necessary for conviction of the crime of kidnapping. The court, citing *People v. Chessman*, 38 Cal.2d 166, 192, 238 P.2d 1001, 1017 (1951), *cert. denied*, 343 U.S. 915, 72 S.Ct. 650, 96 L.Ed. 1330, *overruled, People v. Daniels*, 71 Cal.2d 1119, 1139, 459 P.2d 225, 238, 80 Cal.Rptr. 897, 910 (1969), a since-overruled California decision, stated that "it is the fact of forcible removal, not the distance involved, that establishes the crime of kidnapping."

In the landmark decision of *People v. Levy*, 15 N.Y.2d 159, 204 N.E.2d 842, 256 N.Y.S.2d 793 (1965), the New York Court of Appeals held that detention or asportation that was merely incidental to the commission of robbery was insufficient to convict three defendants of kidnapping even though the literal language of the kidnapping statute might be applicable. Noting that the statute was drafted in very broad terms, the court concluded:

This definition could literally overrun several other crimes, notably robbery and

rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.

It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words.

*Id.* at 164, 204 N.E.2d at 844, 256 N.Y.S.2d at 796.

Subsequently, in *People v. Cassidy,* 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976), the court of appeals applied the merger doctrine to preclude convictions for kidnapping when the abduction of the victims was incidental to the commission of the crimes of robbery and rape. The *Cassidy* court stated:

The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them.

*Id.* at 767, 358 N.E.2d at 873, 390 N.Y.S.2d at 47.

In *People v. Daniels,* 71 Cal.2d 1119, 459 P.2d 225, 80 Cal.Rptr. 897 (1969), the California Supreme Court, citing *Levy,* overruled the "any movement" rule of *Chessman* and held that the California kidnapping statute was not intended to be applicable to detention or asportation that was merely incidental to the commission of assault, robbery, or rape. *Id.* at 1139–40, 459 P.2d at 238, 80 Cal.Rptr. at 910. The court

also noted that asportation that *substantially* increases the risk of harm over and above that necessarily present in the underlying crime is not incidental and, therefore, does not preclude conviction of kidnapping. *Id.* at 1139–40, 459 P.2d at 238, 80 Cal.Rptr. at 910. Although the California Supreme Court adopted New York's "incidental detention or asportation" test, however, it failed to adopt the merger doctrine.

Recent cases indicate that most states follow the Arizona, New York, or California rule. The manner in which these rules are applied differs substantially among the states, however.

Arizona has not abandoned the theory that forcible removal of a victim, even though incidental to the commission of another crime, is sufficient asportation for conviction of kidnapping. Thus, moving a victim from one room to another constitutes sufficient asportation. *See State v. Jones,* 123 Ariz. 373, 377, 599 P.2d 826, 830 (Ct. App.1979). Other states have held similarly. *See Samuels v. State,* 253 A.2d 201, 203–04 (Del.1969) (taking victim two-and-one-half miles and raping her constitutes kidnapping; court rejected merger doctrine, stating that same transaction may give rise to more than one offense); *Wilson v. State,* 253 Ind. 585, 592, 255 N.E.2d 817, 821–22 (1970) (when victim was forced back into her car, transported, and raped, asportation was not incidental to commission of rape and constituted kidnapping); *State v. Ginardi,* 111 N.J.Super. 435, 439–41, 268 A.2d 534, 536–37 (1970), *aff'd,* 57 N.J. 438, 273 A.2d 353 (1971) (court refused to evaluate New York and California rules in affirming kidnapping conviction of defendant who forced his way into car containing two women and ordered them to take turns driving while he sexually abused them); *Moore v. State,* 23 Md.App. 540, 548–49, 329 A.2d 48, 53 (1975) (in affirming kidnapping conviction in conjunction with rape court expressly rejected New York rule); *State v. Morris,* 281 Minn. 119, 121–24, 160 N.W.2d 715, 717–18 (1968) (removal of one hundred to one hundred fifty feet and five-minute detention of assault victim sufficient to

constitute kidnapping; no time or distance qualification contained in kidnapping statute).

The more recent trend of the states has been to follow the New York and California rules. In *People v. Beaumaster*, 17 Cal. App.3d 996, 1006, 95 Cal.Rptr. 360, 366–67 (1971), a California Court of Appeal stated that, in determining whether asportation is incidental to the underlying crime and whether it substantially increased the risk of harm to the victim, the fact finder should consider the intent and objective of the defendant in effecting the movement of the victim and whether the movement was a natural and servient part of the underlying crime. In *People v. Schafer*, 4 Cal.App.3d 554, 560–61, 84 Cal.Rptr. 464, 468 (1970), a court of appeal held that the defendant's separate movements of two victims, one covering a distance of one mile and taking two minutes and the other covering a distance of several hundred yards, were solely to facilitate, and were therefore incidental to, the commission of rape. However, when rape victims were moved to secluded areas where the risk of violence increased substantially and commission of the crime would probably go undetected, the California Courts of Appeal have upheld kidnapping convictions. *See People v. Rocco*, 21 Cal.App.3d 96, 105, 98 Cal.Rptr. 365, 370 (1971); *People v. Miller*, 12 Cal.App.3d 922, 932–34, 91 Cal.Rptr. 97, 103–04 (1970).

Several states have either followed the New York and California rules or adopted similar standards. *See People v. Bridges*, 612 P.2d 1110, 1116–17 (Colo.1980) (kidnapping conviction reversed when school teacher, while walking to her car in well-lit school yard, was knocked to ground, dragged to another part of schoolyard and robbed, and then dragged to another part of schoolyard and raped because asportation was incidental to underlying crimes and did not substantially increase risk of harm); *Stalley v. State*, 91 Nev. 671, 674–75, 541 P.2d 658, 660–61 (1975) (kidnapping conviction affirmed because asportation went beyond movement necessary to facilitate commission of rape when defendant, while ostensibly taking victim home, drove in oppo-

site direction, raped her, and thereafter held her against her will); *State v. Reiman*, 284 N.W.2d 860, 873–74 (S.D.1979) (when four defendants were convicted of rape and kidnapping, but only two had abducted victim and transported her to building where other two joined in committing rape, kidnapping convictions of two joining in were reversed because their movement of victim was incidental to commission of rape and did not substantially increase victim's risk of harm).

The Kansas Supreme Court expressly rejected the New York and California rules in *State v. Buggs*, 219 Kan. 203, 213–14, 547 P.2d 720, 730 (1976), construing its kidnapping "statute as requiring no particular distance of removal, nor any particular time or place of confinement." The court, in effect, adopted a restricted application of those standards, however, holding that to constitute kidnapping the confinement or movement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* at 216, 547 P.2d at 731. Applying these principles, the court affirmed the defendants' kidnapping convictions because they had substantially reduced the risk of detection by moving their victims from the fringe of a parking lot back into their store, where the defendants committed the offenses of robbery and rape. *Id.* at 216–17, 547 P.2d at 731–32. *See also State v. Williams*, 226 Kan. 688, 694–95, 602 P.2d 1332, 1337–38 (1979) (per curiam) (kidnapping conviction affirmed when defendant's acts of binding, gagging, and securing victims found not to be incidental to commission of robbery and rape). Florida, which expressly adopted the Kansas position in *Harkins v. State*, 380 So.2d 524, 528 (Fla.App.1980), also seems to be giving a restricted applica-

tion to the New York and California rules. *See Bass v. State*, 380 So.2d 1181, 1183 (Fla.App.1980) (movement not incidental to rape when defendant forced rape victim to drive to isolated area); *Harkins v. State*, 380 So.2d at 528 (confinement not incidental to sexual battery and second-degree murder when defendant tied victim to bed and sexually assaulted and stabbed victim).

 With the aid of familiar rules of statutory construction, we now turn to the task of interpreting our own kidnapping statute. It is well established that penal statutes must give fair warning of the conduct prohibited, *State v. Price*, 237 N.W.2d 813, 815 (Iowa), *appeal dismissed*, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976), and are to be construed strictly, with doubts being resolved in favor of the accused, *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978). When a statute is plain and its meaning is clear, however, courts are not permitted to search for meaning beyond its express terms. *State v. Hocker*, 201 N.W.2d 74, 74 (Iowa 1972). In addition, statutes relating to the same subject matter must be considered in light of their common purpose, *State ex rel. Krupke v. Witkowski*, 256 N.W.2d 216, 219 (Iowa 1977), and in interpreting a statute, other pertinent statutes are to be considered, *State v. Prybil*, 211 N.W.2d 308, 311 (Iowa 1973).

 Applying these principles of construction, we conclude that our legislature, in enacting section 710.1, intended the terms "confines" and "removes" to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly

lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

The rationale for this conclusion is that we do not believe the legislature intended to afford the prosecution a choice of two penalties of such a disparate nature for the typical crime of sexual abuse. The disparity between the sentences for first-degree kidnapping and third-degree sexual abuse— life imprisonment as opposed to not more than ten years—is significant. Although the plain language of section 710.1 appears to encompass the usual case of sexual abuse, in which some movement or confinement occurs, a literal interpretation of the statutory language would not be sensible or just. We therefore believe that because of the substantial disparity between sentences the legislature intended the kidnapping statute to be applicable only to those situations in which confinement or removal definitely exceeds that which is merely incidental to the commission of sexual abuse.

 Applying these rules to the present case, we hold that the conduct of defendant, as shown by the evidence, was sufficient to engender a jury question and avoid a directed verdict of acquittal on the kidnapping charge. At the time Renolds was accosted, she was in an open walkway in the shopping center. Defendant's movement of the victim the short distance from the mall into the restroom in and of itself was not sufficient confinement or removal within the meaning of section 710.1. There are other factors, however, that indicate that the removal and confinement in this case substantially exceeded that which is incidental to the commission of sexual abuse.

First, although the doors to the shopping center were locked, defendant looked into the restroom to ensure further privacy. Pictures introduced as exhibits show that defendant did not choose the restroom for his sexual assault for the personal comfort of himself or his victim. Rather, his actions indicate that he sought the seclusion of the restroom as a means of avoiding detection. Secondly, the binding of the victim's hands behind her back was not necessary to the

commission of the sexual abuse and is not a normal incident of that offense.

Defendant's activities subsequent to the consummation of the sexual abuse are also significant. Although these subsequent activities do not show confinement or removal with "intent to subject the person to a sexual abuse," as literally required by section 710.1(3), defendant's continued confinement and movement of the victim were a continuation of the commission of the sexual abuse and so intertwined with that offense as to come within the contemplation of sections 711.1–.2. The confinement and movement subsequent to the consummation of the act of sexual abuse were not incidental to the commission of that offense, but rather, we believe, for the purpose of avoiding detection or facilitating defendant's escape.

Considering the totality of the facts, there was substantial evidence to support the kidnapping charge, and a jury question was engendered.

**II. Robbery.** The record reveals that there was no direct evidence that defendant came into possession of Renolds's purse and briefcase. However, direct and circumstantial evidence are equally probative. *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979); Iowa R.App.P. 14(f)(16). Although we believe there was sufficient circumstantial evidence of possession, it was not necessary for the State to prove that defendant came into possession of the victim's property. Possession or control of property is an element of theft. § 714.1, The Code 1979. To commit robbery one need only have the intent to commit theft; there is no requirement that theft actually be committed. *Id.* § 711.1. While theft includes the element of taking, which would confer possession, robbery does not. *State v. Holmes*, 276 N.W.2d 823, 825 (Iowa 1979).

Section 711.1 defines robbery:

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:

1. Commits an assault upon another.

2. Threatens another with or purposely puts another in fear of immediate serious injury.

3. Threatens to commit immediately any forcible felony.

It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Theft is defined in section 714.1:

A person commits theft when the person does any of the following:

1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof. . . .

From our review of the record, we find substantial circumstantial evidence that defendant committed the crime of robbery. There was evidence that on three separate occasions defendant told his cousin that a woman left the mall at night with receipts and it would be easy to rob her. Renolds had the receipts with her when she was assaulted. She was deprived of them when she was tied up by defendant. Defendant kicked the purse and briefcase into a little room, and later Renolds thought she heard the sound of a zipper and some pounding. The bank bag was locked and had a zipper on it. The items disappeared at about the same time defendant fled the scene and were never recovered. A rational jury could reasonably infer from these facts that defendant intended to commit a theft, and that he assaulted Renolds or placed her in fear of immediate serious injury in carrying out that intent. The trial court's ruling on the motion for a directed verdict on the robbery count was correct.

AFFIRMED.