# IN THE COURT OF APPEALS OF IOWA

No. 15-1554
Filed September 14, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AARON LEE STINDE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

A defendant appeals his convictions for first-degree kidnapping, three counts of second-degree sexual abuse, domestic abuse assault with bodily injury, and operating a motor vehicle without consent. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Aaron Lee Stinde appeals following a bench trial that resulted in convictions for first-degree kidnapping, three counts of second-degree sexual abuse, domestic abuse assault with bodily injury, and operating a motor vehicle without consent.

## I.      Factual Background

Twenty-year-old A. and Stinde became acquainted through work and began dating, which developed into an intimate relationship. They lived together off and on for about three months. They were not living together on January 15, 2014, but at about 9:30 p.m., they went to the Quad City Inn for the purpose of having consensual sex. They took A.'s car, and she paid for the room rental. Stinde purchased an alcoholic beverage, and A. took a few sips. The two participated in consensual oral and vaginal sex. A. showered, lay down on the bed, and went to sleep for one-and-a-half to two hours.

Stinde woke A. up and started yelling at her about Facebook messages she had allegedly sent to a third party assumed to be a boyfriend. Stinde struck A. in the face, causing a nose bleed. He got on top of her in the bed, choked her, and called her a "whore" and "bitch." When A. went to the bathroom, Stinde followed and, over her objection, forced her to take off her pants and give him oral sex. He then bent her over the sink and penetrated her both vaginally and anally. She made her way to the bed where, again, Stinde forced oral sex on her. She went to the door and attempted to leave, but Stinde pulled her back into the room, threw her to the floor, and choked her.

A. testified that over the course of the evening, Stinde choked her to the point of unconsciousness, kicked her, and hit her in the side of the head hard enough to make her dizzy. At different times during the ordeal, she lost fecal matter as a result of forced anal sex and vomited as a result of the forced oral sex. She pleaded with Stinde to stop, but she testified the ordeal went on for hours. Eventually, Stinde told A. that she could leave if she paid him one hundred dollars for his suffering for having cheated on him.

A. managed to clothe herself, but Stinde told her to get away from the door and give him oral sex one more time. A. retrieved her keys, made it to the outside railing of the motel balcony, and hung on as Stinde pulled her hair and smacked her in the face. She let go of the keys, managed to break loose from Stinde, and ran for the motel lobby. The motel receptionist called the police. Stinde ran to A.'s car and left in it.

Officer Gavin Tigges testified he was called to the Quad City Inn at about 6:30 a.m. on January 16 and first made contact with A. in an ambulance. A. was taken to a hospital, where law enforcement and hospital personnel interviewed her and took pictures of her bruises. A. initially reported she had been sexually assaulted but did not advise either law enforcement or medical personnel that the encounter had begun with consensual sex.

The motel room, including the bathroom and the outside railing that A. had clung to, was examined and pictures were taken. Blood spots, towels, and the furniture disarray were consistent with A.'s testimony. Multiple samples of material were tested for DNA. Two stains taken from A.'s pants contained both seminal fluid and sperm. DNA testing revealed the sperm fraction of the stain

matched the DNA profile of Stinde and the probability of finding the same profile in randomly chosen individuals would be one out of one hundred billion.

Stinde turned himself in to authorities and was charged with kidnapping in the first degree, three counts of sexual abuse in the second degree, domestic abuse/strangulation with bodily injury, and operating without owner's consent. He signed a written waiver of a jury, which was buttressed by an in-court colloquy.

The matter proceeded to trial. Stinde did not testify, but a video of his police interview was shown. During the interview, Stinde claimed the following: He had wanted to break up with A., but they agreed to go to the hotel for sex. The evening began with consensual sex and drinking, but A. received a telephone call from another boyfriend, prompting him to try to leave, but A. would not let him. As she physically resisted Stinde's departure, an altercation developed.

Stinde moved for acquittal at the close of the State's case, but his motion was overruled. The trial court found Stinde's statements were not credible, and Stinde was found guilty of all charges. He was sentenced for a term of life in prison on the kidnapping conviction, which merged with the sexual abuse sentences. Stinde was sentenced to five years in prison on the domestic-abuse-causing-bodily-injury conviction and two years on the operating-without-the-owner's-consent conviction, to run concurrently with the kidnapping sentence.

On June 22, 2015, before sentencing, Stinde was notified that the Iowa Department of Public Safety had sent a note to the prosecutor that stated a 1999 Journal of Forensic Science article indicated the population data published by the

FBI in 1999 contained an error. The FBI data was relied upon in determining the likelihood that Stinde's DNA was found at the scene. The DCI filed a supplemental report that confirmed the previous report finding Stinde's DNA in the sperm in one test, but the other test could not be reevaluated because of the low level of mixtures.

Stinde moved for acquittal or, alternatively, for his convictions to be set aside and a new trial or supplemental hearing granted based on newly discovered evidence. He argued the changed results of one of the DNA tests had an effect on the trial court's decision of guilt and on his counsel's ability to cross-examine the criminalist who testified concerning the DNA test results. He also argued it had an effect on his decision to waive a jury. His motions were denied.

On appeal, Stinde contends there was insufficient evidence to support a conviction of kidnapping in the first degree by reason of a failure to establish confinement and the district court erred in failing to grant a new trial or supplemental hearing based on the statistical error in the DNA testing, which he asserts was newly discovered evidence.

## II. Error Preservation

The State does not contest error preservation as to any issues Stinde has raised.

## III. Motion for Acquittal—Sufficiency of the Evidence

### A. Standard of Review

Sufficiency-of-the-evidence challenges are based on a lack of substantial evidence *State v. Sutton,* 636 N.W.2d 107, 110 (Iowa 2001). Substantial

evidence means such evidence viewed in its most favorable light as would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* All evidence must be considered and not just evidence favorable to the State. *Id.*

### B. Discussion

Stinde asserts the facts do not support the transport or confinement elements required to constitute kidnapping. With regard to these elements, our supreme court has stated:

> Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

*State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981). After recently reviewing its previous cases involving sexual abuse and confinement, our supreme court has essentially reaffirmed this rule. *See State v. Robinson,* 859 N.W.2d 464, 478-479 (Iowa 2015).

The facts before us support a finding of confinement. The meeting between the two parties began with consensual sex. However, A.'s voluntary entry into the room and her initial consent to the planned activity does not preclude a kidnapping conviction. *See State v. Griffin,* 564 N.W.2d 370, 372-73 (Iowa 1997) (holding voluntary entry into a motel room and consent to join in unlawful activity with the defendant "does not prevent the law from recognizing

her as a victim, or from recognizing her attacker as a kidnapper"). After completion of two consensual encounters, A. went to sleep on the bed. Stinde awakened her and confronted her about a text message that she had allegedly sent.[1] He proceeded to bloody A.'s nose, followed her into the bathroom when she went to clean up, and forcibly sexually assaulted her over her objection. He forced oral, vaginal, and anal sex more than once, called her a "whore" and a "bitch," struck her, choked her, and kicked her over a period of hours while preventing her from leaving the room. When A. attempted to escape, she was pulled back into the room. She pleaded with Stinde to let her go, but he would not. As the trial court found, "there could be little question that [the confinement] substantially increased the risk of harm to [A.]," as she testified that she felt terrorized by the confinement and abuse, apparently making her afraid to call for help and substantially reducing Stinde's risk of detection.

Stinde argues the confinement was merely incidental to the commission of three acts of second-degree sexual abuse. We disagree. The fact that he sexually abused A. for hours and still wanted oral sex before he would let her go does not make the detention incidental to the commission of the underlying crimes. It would be ludicrous to determine the confinement was merely incidental to the sexual abuse when he retained her for the purpose of serial sexual assaults over a period of hours.

---

[1] Stinde asserted in his interview that she received a call, but her phone did not reflect that any call was received during the relevant period. It was later determined that a text message had been sent from A.'s phone at 1:04 a.m. A. claimed she had not sent the text message, which used language she did not use, and was asleep at the time it was sent. The assumption is that the message was sent by Stinde.

The evidence was sufficient to establish Stinde's guilt of kidnapping in the first degree beyond a reasonable doubt. If Stinde is to be granted relief because of the newly discovered evidence, it must be in the form of a new trial.

### IV. Request for a New Trial or Supplemental Hearing

Stinde relies on the proposition that when a defendant has discovered new and important material evidence after the verdict that is favorable to the defendant and could not have previously been discovered with reasonable diligence, the defendant is entitled to a new trial or a supplemental hearing when the matter was tried to the court. *See* Iowa R. Crim. P. 2.24(2)(b)(8), (2)(c).

#### A. Standard of Review

To prevail on the motion for a new trial based on newly discovered evidence, Stinde must establish: (1) the evidence was discovered after the verdict, (2) the evidence could not have been discovered earlier with due diligence, (3) the evidence is material to the case and not merely cumulative, and (4) the evidence probably would have changed the results of the trial. *State v. Jefferson,* 545 N.W.2d 248, 249 (Iowa 1996).

#### B. Discussion

Stinde has failed to establish or even argue that the DNA evidence was anything other than cumulative or that it would have changed the result of the trial. Instead, he contends it limited his counsel's ability to cross-examine and affected his decision to waive the jury. We conclude that the evidence was, in fact, cumulative and would not have changed the result of the trial. The uncontroverted evidence of Stinde's guilt was overwhelming.

### V. Ineffective Assistance of Counsel

#### A. Standard of Review

Stinde contends that his counsel was ineffective because he was unable to cross-examine the State's expert witness, who testified to the DNA findings. Ineffective assistance of counsel claims are of a constitutional nature and are reviewed de novo. *Ledezma v. State,* 626 N.W.2d 134, 141 (Iowa 2001). Ordinarily, we preserve ineffective-assistance-of-counsel claims for postconviction-relief hearings, but we will consider them when the record is adequate. *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). To the extent the claim of ineffective assistance in this case is a true claim of ineffective assistance, the record is adequate.

#### B. Discussion

To prevail on an ineffective-assistance-of-counsel claim, the proponent must establish both ineffective assistance and prejudice by a preponderance of the evidence. *Ledezma*, 626 N.W.2d at 142. If the claim lacks prejudice, it can be decided on that basis alone. *Id.*

The meeting between Stinde and A. began with consensual sex. The presence of Stinde's DNA was expected and inconsequential. The contention that the error would have been a subject for effective cross-examination assumes a situation where Stinde's counsel knew of the error but the prosecutor did not. It further assumes that because of his lack of knowledge of the error, the prosecutor attempted to use the erroneous report as evidence. Otherwise, the DNA test found to be defective would have been just another test among several that did not contain enough material to get a reliable test, and it would not have

been used by the State. The erroneous test did not absolve Stinde in any way. It was rejected because of insufficient material to make a valid test. Regardless, the evidence in this case was overwhelming, did not depend on the DNA test, and would have been equally strong if the test had been ignored.

Stinde also contends that if the error in the DNA testing had been known, he would not have waived his right to a jury. He also contends the information would have affected his counsel's recommendation that the jury be waived. Stinde quotes statistics that a defendant is more often acquitted if a matter is tried to a jury than if tried to the court.

The same differential between the methods of trial existed before the discovery of the DNA error as existed afterward. The DNA evidence was primarily cumulative and of little value since the parties agreed that the evening began with consensual sex. The error found in the DNA testimony was insignificant, and the DNA test was meaningless because of the initial consent to the sex act. No prejudice has been established.

We affirm Stinde's conviction of kidnapping in the first degree and the penalty imposed.

**AFFIRMED.**