**IN THE COURT OF APPEALS OF IOWA**

No. 17-0189
Filed July 5, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAKOTA M. POLAND,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

        Dakota Poland appeals the judgment and sentence imposed on his convictions for first-degree kidnapping, second-degree kidnapping, and willful injury. **CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**

        Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

        Heard by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A jury convicted Dakota Poland of first-degree kidnapping, second-degree kidnapping, and willful injury. On appeal, Poland challenges the sufficiency of the evidence supporting his kidnapping convictions. He also contends the sentence imposed on his first-degree-kidnapping conviction is unconstitutional as applied to him. Finally, Poland argues the district court erred in assessing court costs to him without making a determination of his ability to pay.

**I. Background Facts and Proceedings.**

The events giving rise to Poland's convictions occurred on March 10, 2016, at the home where Poland lived with his parents and three younger sisters. Poland, then twenty years old, was dating L.R., who was sixteen years old. L.R. had been staying at the home for approximately one week but decided to leave because Poland was drinking vodka. L.R. did not like being around Poland when he was drinking alcohol because "it always turned out bad," and she had told Poland that if he continued to drink, she would leave him.

L.R. grabbed her purse with her belongings from Poland's second-floor bedroom and was walking down the stairs when Poland emerged from the kitchen, blocking the exit, and told L.R. to go back upstairs. When L.R. did not comply, Poland punched her in the face and put out a cigarette on her back. Poland grabbed L.R. by the arm and dragged her to the stairs. He then grabbed her hair and tried to drag her up the stairs while punching her. At one point, Poland stomped on her head. He also hit her over the head with a wall decoration. When Poland threatened to kill her if she did not go to his bedroom, L.R. relented.

When L.R. reached the bedroom, Poland pushed her to the floor, secured

the door with a chain lock, and barricaded it shut with a stick. While in the bedroom, Poland strangled L.R. and punched her about the head and face. He bit her on both of her hands, her right cheek, the bridge of her nose, and her leg. Poland struck her on the back with two different skateboards. He also punched her in the head while holding a glass ashtray in his hand. After forcing L.R. to her knees, he struck her on the back of her head and back approximately five times with what L.R. described as a "homemade machete."

After the assault in the bedroom, Poland forced L.R. to the basement where he ordered her shower. When L.R. went into the shower clothed, Poland called her "stupid," told her to get out, and ripped off her shirt and bra. L.R. removed her pants and got back in the shower, which is when Poland began hitting her with a broom stick. After Poland ordered L.R. out of the shower, he hit her with the broom, causing her to lose her balance and fall into a pit in the floor where the shower drained. While in the basement, Poland also hit L.R.'s legs with a pool cue, telling her that he was going to break her kneecaps.

After L.R. fell in the shower drain, Poland's mother intervened to stop the assault. L.R. dressed, and Poland's father drove her to the hospital. The emergency-room physician who treated L.R. found her visit memorable due to "[t]he degree to which she was beaten," with "multiple contusions, abrasions, bites, burns all over her body."

The State charged Poland with first-degree kidnapping, second-degree kidnapping, and willful injury. Following trial, a jury found Poland guilty as charged. The district court sentenced Poland to life in prison for the first-degree kidnapping conviction and twenty-five years in prison on the second-degree kidnapping

conviction, ordering the sentences to be served concurrently. The court did not impose a sentence on the willful-injury conviction because it merged with Poland's first-degree-kidnapping conviction. The court ordered Poland to pay court costs but found he is not capable of paying court-appointed attorney fees because of the length of his sentence. Poland appealed.

**II. Sufficiency of the Evidence.**

Poland challenges the sufficiency of the evidence supporting his kidnapping convictions. Iowa Code section 710.1 (2016) provides the following definition of the crime:

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
> 1. The intent to hold such person for ransom.
> 2. The intent to use such person as a shield or hostage.
> 3. The intent to inflict serious injury upon such person, or to subject the person to a sexual abuse.
> 4. The intent to secretly confine such person.
> 5. The intent to interfere with the performance of any government function.

Poland challenges the sufficiency of the evidence concerning the element of confinement with regard to both kidnapping convictions. He also challenges the State's proof on the element of torture with regard to his first-degree-kidnapping conviction.

**A. Confinement.**

Poland first challenges the sufficiency of the evidence concerning the element of confinement with regard to both his first- and second-degree kidnapping convictions. We review the sufficiency of the evidence supporting a conviction for

correction of errors at law. *See State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). We view the record in the light most favorable to the State, drawing all reasonable inferences that may be drawn from the record in the State's favor. *See id.* In doing so, we consider the entire record, not just the evidence supporting the verdict. *See id.*

In *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981), the Iowa Supreme Court concluded that the confinement necessary to support a kidnapping conviction requires more than the confinement that is "an inherent incident of commission of [the underlying offense]."

> Although no minimum period of confinement . . . is required for conviction of kidnapping, the confinement . . . must definitely exceed that normally incidental to the commission of [the underlying offense]. Such confinement . . . must be more than slight, inconsequential, or an incident inherent in the crime of [the underlying offense] so that it has a significance independent from [the underlying offense]. Such confinement . . . may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

*Rich*, 305 N.W.2d at 745. This three-part test, known as the *Rich* tripartite test, has since been used to determine whether confinement exceeded that normally incident to the commission of the underlying crime. *See, e.g.*, *State v. Robinson*, 859 N.W.2d 464, 475-78 (Iowa 2015) (discussing cases that have applied the *Rich* tripartite test). The trial court followed the tripartite test by instructing the jury:

> A person is "confined" when her freedom to move about is substantially restricted by force, threat, or deception. The person may be confined either in the place where the restriction began or in a place to which she has been removed.
> No minimum time of confinement or distance of removal is required. It must be more than slight. The confinement or removal must have significance apart from the assault.

In determining whether confinement or removal exists, you may consider whether:
1. The risk of harm to L.R. was substantially increased.
2. The risk of detection was significantly reduced.
3. Escape was made significantly easier.

At the close of the State's evidence, Poland moved for judgment of acquittal, asserting the evidence is insufficient to support a finding that he confined L.R. because any confinement was incidental to the underlying assault. The district court denied the motion, finding that although the confinement issue was "a closer question," there was sufficient evidence by which a reasonable trier of fact could find Poland confined L.R.:

This is not a traditional kidnapping. And also we have a short period of time, quite honestly, for a kidnapping to occur. But as the law and the instructions tell us, there is no required period of time for a removal or confinement to be present.
If [] Poland had stayed in the kitchen or the living room and assaulted [L.R.] in virtually every way that he did in this case, it probably would not meet the minimum requirement for a kidnapping. But the fact that he took her upstairs and locked the door, held her in that room, could be seen as a confinement or removal because it kept other people in the house away from [L.R]; it kept people away from both of them who might have, and who eventually did, intercede and stop the assault.

It is clear that Poland restricted L.R.'s ability to move by force and by threat. L.R. was intent on leaving Poland's home, but Poland prevented her from doing so by grabbing her by the arm and hair and attempting to pull her upstairs. In spite of her wish to leave, L.R. went to Poland's bedroom when he threatened to kill her. He also secured a chain on his bedroom door and barricaded it, preventing her from opening it enough to leave the room. Doing so allowed Poland to continue the assault for a longer duration than was necessary to commit the underlying offense. It prevented other family members, who were in the home during the

assault, from intervening and stopping it, which, in turn, substantially increased the risk of harm to L.R. Removing L.R. to the bedroom gave Poland access to weapons, such as his machete and skateboards, thus also substantially increasing the risk of harm to L.R.

On this record, there is substantial evidence Poland "confined" L.R. as necessary to support his kidnapping convictions. *See State v. Mesenbrink*, No. 15-0054, 2015 WL 7075826, at *4 (Iowa Ct. App. Nov. 12, 2015) (rejecting the defendant's argument that, because his thirty-minute confinement of S.A. was the same amount of time he assaulted her, the confinement was incidental to the underlying offense of willful injury causing serious injury and opining the period of confinement was "longer than necessary to commit willful injury causing serious injury").

**B. Torture.**

In an ineffective-assistance-of-counsel claim, Poland also challenges the sufficiency of the evidence concerning his first-degree-kidnapping conviction. First-degree kidnapping occurs "when the person kidnapped, as a consequence of the kidnapping, suffers serious injury, or is intentionally subjected to torture or sexual abuse." Iowa Code § 710.2. The jury was instructed that in order to find Poland guilty of first-degree kidnapping, the State had to prove:

> 1. On or about March 10, 2016, the defendant confined or removed L.R. from one place to another.
> 2. The defendant did so with the specific intent to inflict serious injury upon L.R.
> 3. The defendant knew he did not have the consent of L.R. to do so.
> 4. As a result of the confinement or removal, L.R. was intentionally subjected to torture.

Poland moved for judgment of acquittal on the first-degree-kidnapping charge, alleging there was no evidence L.R. suffered a serious injury because "although [her injuries were] memorable and many, they were not life-threatening." The district court rejected this claim, stating:

> [A]s [] Poland is charged, it is not necessary that the State prove a serious injury has occurred. There are forms of willful injury and forms of kidnapping that would require that, but the charges that have been filed in this case do not require the actual occurrence of a serious injury but merely that the defendant had the intent to cause a serious injury while involved in these acts.
> And I believe that the defendant's behavior, based upon the . . . unrebutted record at this time, is that a reasonable trier of fact could see his behavior as showing an intent to cause a serious injury because of the weapon used, the multiple forms of assault that were involved, and the length of time of the assault.

On appeal, Poland argues his trial counsel was ineffective by failing to instead argue is insufficient evidence that he tortured L.R. *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal."); *see also State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules.").

We review ineffective-assistance-of-counsel claims de novo. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). Although we prefer to preserve ineffective-assistance claims for postconviction-relief proceedings, we may resolve such claims on direct appeal when the record is sufficient. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). To prove counsel was ineffective, Poland must show his counsel failed to perform an essential duty and this failure resulted in

prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015). Both elements must be proved by a preponderance of the evidence to prevail; we may affirm on appeal if either element is lacking. *See Strickland*, 466 U.S. at 687. To show prejudice, Poland "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The deciding question is whether sufficient evidence supports a finding that Poland subjected L.R. to torture; if so, his ineffective-assistance-of-counsel claim fails because his motion for judgment of acquittal would have been meritless. *See State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014) (finding counsel did not breach an essential duty in failing to move for judgment of acquittal on the basis of insufficient evidence because sufficient evidence supported the defendant's conviction and therefore the motion would have been meritless); *State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996) (holding counsel has no duty to make a meritless motion). The jury was instructed, "'Torture' means the intentional infliction of severe physical or mental pain." The photographs of L.R.'s extensive injuries, her testimony as to how the injuries were received and the "excruciating" physical pain and mental pain she experienced, and the testimony of the emergency-room physician and responding officers concerning L.R.'s appearance and demeanor on the date in question provide more than ample evidence to support a finding that Poland inflicted severe physical or mental pain on L.R. Because sufficient

evidence supports such a finding, counsel was not ineffective in failing to move for judgment of acquittal on this basis.

### III. Sentence.

Poland next challenges the sentence imposed on his first-degree-kidnapping conviction. He argues a sentence of life in prison without parole is illegal because it violates federal and state constitutional protections against cruel and usual punishment. Although we typically review challenges to illegal sentences for correction of errors at law, we review challenges to the constitutionality of a sentence de novo. *See State v. Propps*, 897 N.W.2d 91, 97 (Iowa 2017).

We employ a three-part test to determine whether a sentence is so grossly disproportionate to the underlying crime as to violate our constitutional protections against cruel and unusual punishment. *See State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018). First, we balance the gravity of the crime against the severity of the sentence. *See id.* If this does not raise an inference of gross proportionality, no further analysis is required. *See id.* If an inference is raised, we compare the challenged sentence to sentences of other crimes in our jurisdiction and in other jurisdictions. *See id.*

First-degree kidnapping is a class "A" felony. *See* Iowa Code § 710.2. The legislature has mandated that, upon conviction of a class "A" felony, the court "commit the defendant into the custody of the director of the Iowa department of corrections for the rest of the defendant's life." *See* Iowa Code § 902.1. Our supreme court has considered the constitutionality of this sentence for first-degree kidnapping and determined it does not violate prohibitions on cruel and unusual

punishment. *See State v. Nims*, 357 N.W.2d 608, 610-11 (Iowa 1984) (rejecting contention that mandatory life sentence for first-degree kidnapping is unconstitutional as applied to the defendant); *State v. Lamphere*, 348 N.W.2d 212, 220-21 (Iowa 1984) (finding "no merit" in the contention that mandatory life sentence for first-degree kidnapping is unconstitutionally disproportionate). Likewise, Poland's claim that he should be considered a juvenile or entitled to the same individualized sentencing hearing as juveniles because he "was only slightly above the arbitrary age of majority" at the time he committed the offense of first-degree kidnapping has been expressly rejected by our supreme court. *See, e.g.*, *State v. Lyle*, 854 N.W.2d 378, 403 (Iowa 2014). "We are not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Accordingly, we affirm the life sentence imposed on Poland's first-degree-kidnapping conviction.

## IV. Assessment of Costs.

Iowa Code section 910.2(1) (2016) states:

> In all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities, to the clerk of court for fines, penalties, surcharges, and, to the extent that the offender is reasonably able to pay, for . . . court costs including correctional fees approved pursuant to section 356.7 . . . .

"Constitutionally, a court must determine a criminal defendant's ability to pay before entering an order requiring such defendant to pay criminal restitution pursuant to Iowa Code section 910.2." *Goodrich v. State*, 608 N.W.2d 774, 776 (Iowa 2000).

In entering judgment against Poland, the court ordered Poland to pay court costs but concluded he "is not capable of paying court-appointed attorney fees because of the length of the sentence imposed." Poland claims the district court erred in assessing him costs without making a determination of his reasonable ability to pay.

The State argues Poland has failed to exhaust his remedies because he did not file a motion pursuant to Iowa Code section 910.7. A defendant is required to file such a motion when the amount of restitution is not determined by the time a notice of appeal is filed. *See State v. Swartz*, 601 N.W.2d 348, 354 (Iowa 1999). Here, an order for room and board fees was filed on January 11, 2017, stating that Poland owed $15,250.00 plus costs and setting forth a plan of payment of $20 per month. Poland filed his notice of appeal on February 2, 2017.

The facts here are similar to the facts of *State v. Johnson*, 887 N.W.2d 178, 184 (Iowa Ct. App. 2016). In *Johnson*, the district court determined the defendant was able to pay $100 of his court-appointed attorney fees, but the record was silent as to whether the court considered the defendant's ability to pay court-ordered court costs. *See Johnson*, 887 N.W.2d at 184. On appeal, this court was unable to determine whether the district court reasonably exercised its discretion in ordering the defendant to pay restitution for court costs. *See id.* Accordingly, we vacated the portion of the sentence ordering the defendant to pay court costs and remanded to the district court for a determination of the defendant's ability to pay. *See id.* Because the record before us is likewise silent as to whether the court considered Poland's ability to pay court costs, we vacate that portion of the

sentence and remand for a determination of Poland's reasonable ability to pay. *See id.*

**CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**