# IN THE COURT OF APPEALS OF IOWA

No. 21-1206
Filed February 22, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SAUL SANTOS VASQUEZ MARTINEZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

        A defendant appeals his conviction for kidnapping in the second degree. **AFFIRMED.**

        Ronald W. Kepford, Winterset, for appellant.

        Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

        Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

In a frightening disruption to an otherwise idyllic summer day, Saul Santos Vasquez Martinez grabbed a girl from the sidewalk outside of his house and pulled her inside where he attempted to sexually abuse her. Following a bench trial, he was convicted of kidnapping in the second degree and assault with intent to commit sexual abuse. On appeal, Vasquez Martinez only challenges the sufficiency of the evidence supporting his kidnapping conviction. He claims evidence that he moved his victim "from an outside public area to a location inside a private residence" was insufficient to prove that he confined or removed "a person from one place to another." Iowa Code § 710.1 (2019).

**I.       Background Facts and Proceedings**

On July 23, 2019, sixteen-year-old C.D. was working at her summer job babysitting for a family with one child. After the child got done with her chores, she and C.D. ran an errand and then went outside to play. C.D. thought this was around noon. They sprayed some silly string, dumped water on each other, tried to climb a tree in the front yard of the child's house, and wrote on the sidewalk with chalk. Then they decided to go for a walk around the block.

As they passed by a house two doors down from the child's, they saw a man—later identified as Vasquez Martinez—drinking on his front porch steps. He mumbled something at them, but C.D. told the child "to ignore him and let's just keep going." The two kept playing outside the child's house after their walk, while the man stayed on the steps of his front porch. C.D. heard him say something to them again, but she didn't respond.

Sometime before 3:00 p.m., when C.D. had to drop the child off at her mother's work, the child went inside to get a drink and watch a show. C.D. stayed outside to clean up their toys. She noticed that they had left a pink bucket near the house where Vasquez Martinez was standing. C.D. went over to get the bucket and heard him say something again. She thought that he "seemed frantic . . . like he needed something." So she walked over and asked if everything was okay. Vasquez Martinez grabbed her arm and starting pulling her into the house. C.D. told him to let her go and tried to pull away, repeating to him: "I'm babysitting. I need to go. You need to let me go." But he kept dragging her inside. They went through a living room with a blow-up mattress in the corner, into a hallway, and then back to a bedroom. As they moved through the hallway, Vasquez Martinez was holding her in a "bear hug," with her arms pinned to her side.

Once inside the bedroom, which also had a blow-up mattress in the corner, Vasquez Martinez pushed C.D. up against a wall and began kissing her chest area and touching her breasts. She was able to get his hands out from under her shirt, but then he grabbed her hands and started kissing her neck. C.D. said that she was "crying and telling him to stop," but he kept kissing and touching her. She was somehow able to push him away and get into the living room. Vasquez Martinez caught up with her, grabbed her upper arm, and pulled her back into the bedroom, where he pushed her up against the air mattress and tried to stick his hands down her pants. He then pushed C.D. onto the mattress, but she "bounced back up," pushed him away again, and ran to the house where she was babysitting.

Once there, C.D. grabbed her cell phone and called the mother of the child she was babysitting. The child's mother had been worried about them when they

didn't arrive at her work by 3:00 p.m., testifying: "I just knew something wasn't right because she always answers her phone and she is always on time." So around 3:30 p.m., the child's mother started gathering her things to go home to see what was wrong when she got the call from C.D., sometime between "3:30, quarter to 4." C.D. was hysterical while telling the child's mother what happened, though she kept assuring her the child was fine. The child's mother told her to stay inside the house and lock the doors while she called 911.

Police were dispatched to the child's house just before 4:00 p.m. The first officer on the scene spoke with C.D., who gave them a description of Vasquez Martinez and his location two houses away from them. That officer knocked on Vasquez Martinez's door for ten or fifteen minutes, but no one answered. Once other officers arrived on the scene, they kept knocking on the door until Vasquez Martinez came out, about an hour later. He was arrested and charged by trial information with second-degree kidnapping in violation of Iowa Code sections 710.1 and 710.3 and assault with intent to commit sexual abuse causing bodily injury in violation of section 709.11(2).

Vasquez Martinez waived his right to a jury, and the case proceeded to a bench trial in March 2021. In its written verdict, the court found Vasquez Martinez guilty of second-degree kidnapping and the lesser-included offense of assault with intent to commit sexual abuse. Vasquez Martinez appeals.

## II. Standard of Review

"We review a claim of insufficient evidence in a bench trial just as we do in a jury trial." *State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019). "If the verdict is supported by substantial evidence, we will affirm." *Id.* (citation omitted). In making

that determination, we review "all the evidence and the record in the light most favorable to the trial court's decision." *Id.* (citation omitted). Because the question is simply whether the evidence was sufficient to support the conviction, "our review of challenges to the sufficiency of the evidence is for errors at law." *Id.*

## III. Analysis

To prove second-degree kidnapping, the State needed to establish that Vasquez Martinez confined or removed C.D., who was under eighteen years old, from one place to another without her consent and with the intent to subject her to sexual abuse. *See* Iowa Code §§ 710.1(3), .3(1). Vasquez Martinez challenges the often-disputed confinement-or-removal element of this crime, claiming that his act of moving C.D. "from an outside public area to a location inside a private residence" was not sufficient evidence that she was confined or removed. We disagree.

In *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981), our supreme court adopted the incidental rule for kidnapping offenses. *State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022). This rule requires the confinement or removal to be more than what is an inherent incident of the commission of the underlying crime, in this case intent to commit sexual abuse. *Rich*, 305 N.W.2d at 745. The supreme court reexamined the rule in *State v. Robinson*, 859 N.W.2d 464, 469 (Iowa 2015), where it explained:

> The general notion is that when confinement or removal is part-and-parcel of an underlying crime such as robbery or sexual abuse, such removal or confinement is considered incidental to the underlying crime and does not provide a basis for a separate kidnapping prosecution. In order for an accused to be charged with

> both kidnapping and the underlying felony, the confinement or removal must be in excess or beyond that normally associated with the underlying crime.

*Accord Rich*, 305 N.W.2d at 745 (noting the rationale for the rule "is that we do not believe the legislature intended to afford the prosecution a choice of two penalties of such a disparate nature for the typical crime of sexual abuse").

After *Rich*, we have applied a "three-prong test to determine whether confinement or removal can support a conviction of kidnapping." *Albright*, 925 N.W.2d at 152. Those three prongs "include confinement or removal that (1) substantially increases the risk of harm to the victim, (2) significantly lessens the risk of detection, or (3) significantly facilitates escape of the perpetrator." *Id.* at 152–53 (cleaned up). "One prong must be present to support a kidnapping conviction alongside the underlying crime." *Id.* at 153.

Turning to those prongs, Vasquez Martinez argues that because "the duration of C.D.'s confinement did not significantly exceed the time required for [him] to commit the underlying" offense, the State presented insufficient evidence of confinement or removal. *See Robinson*, 859 N.W.2d at 478 ("Our cases have generally held that the substantially-increased-risk-of-harm prong of the *Rich* tripartite test may be satisfied if the duration of confinement substantially exceeded that of the underlying crime."). But "[n]o minimum period of confinement is required to convict a defendant of kidnapping." *State v. McGrew*, 515 N.W.2d 36, 39 (Iowa 1994); *accord State v. Bitzan*, No. 12-0551, 2013 WL 3273813, at *4 (Iowa Ct. App. June 26, 2013) (finding confinement where it "lasted only about ten minutes"). Instead, the relevant inquiry remains whether the confinement or removal "exceed[ed] that normally incidental to the commission of sexual abuse."

*Rich*, 305 N.W.2d at 745. "If the defendant merely 'seizes' the victim, this does not rise to the level of kidnapping." *Bitzan*, 2013 WL 3273813, at *3 (citing *State v. Mead*, 318 N.W.2d 440, 445 (Iowa 1982)). The evidence here showed more than a seizure.

Vasquez Martinez grabbed C.D. from off the sidewalk in front of his house, pulled her into the house, through the living room, and into a back bedroom, where he began kissing and touching her. When C.D. tried to escape, Vasquez Martinez dragged her back into the bedroom, and continued his attempts to sexually abuse her until she was able to escape again. This was not a momentary seizure like in *Mead*, 318 N.W.2d at 442, where the defendant followed his victims into their home uninvited, held a knife to the neck of one of the victims, struck the second victim in the face after the first got away, ripped the second victim's purse away from her, and then ran out the back of the house. Nor is it like *State v. Marr*, 316 N.W.2d 176, 177–78, 180 (Iowa 1982), where the court found the confinement or removal did not exceed that normally incidental to the commission of sexual abuse when the victim was moved from the sidewalk in front of her apartment building to a gangway separating the building from a neighboring house. It is also unlike *Robinson*, in which the victim's confinement was limited to her removal from the hallway into the defendant's bedroom, which he then locked from the inside. 859 N.W.2d at 481–83 (noting "some reluctance to find the independent crime of kidnapping when the additional confinement or removal occurs within an enclosed structure"); *accord State v. Buggs*, 547 P.2d 720, 731 (Kan. 1976) ("The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; *the removal from a public place to a place*

*of seclusion is.*" (emphasis added)). *But see State v. Jackson Thomas*, ___ N.W.2d ___, ___, 2022 WL 10827015, at *5 (Iowa Ct. App. 2022) ("*Robinson . . .* does not foreclose the possibility that someone can be kidnapped when being confined or removed to a room in the same enclosed structure already occupied."); *Harper v. State*, No. 17-0435, 2018 WL 4360892, at *6 (Iowa Ct. App. Sept. 12, 2018) (finding that moving of victim to more secluded area within home had independent significance because it significantly lessened risk of detection, substantially increased risk of harm, and significantly facilitated escape).

As the State argued in closing:

This happened in a residential neighborhood on a well-traveled street in Cedar Falls. An assault occurring outside of [Vasquez Martinez's] residence is far more likely to draw the attention of neighbors or concerned passersby and substantially limit the time he has with C.D. and his ability to sexually abuse her. . . . He specifically waited until he saw [the child that C.D. was babysitting] go inside her house before frantically yelling out to C.D. and gaining her attention. *But for C.D.'s escape from the defendant's residence, no one would have known where she was or where to begin looking for her.*

(Emphasis added.)

We agree with the State. Had the assault taken place outside Vasquez Martinez's home, C.D.'s chances of escape would have increased, as would the risk to Vasquez Martinez that his acts would be discovered. *See Albright*, 925 N.W.2d at 156 ("If Albright had not confined K.H. to the house, she would have been free to leave and further injury would have been prevented. . . . Moreover, the secluded nature of the home significantly decreased the likelihood of detection."). But because C.D. was confined in the house, Vasquez Martinez was able to prevent her first attempt to escape, and he eluded detection from the police for more than an hour after the attempted sexual abuse. *See State v. Davis*, 584

N.W.2d 913, 917 (considering evidence that the defendant decreased the victim's chances of escape by dragging her back to the apartment). Even though no weapon was used, *cf. Robinson*, 859 N.W.2d at 479, we find these facts show that C.D.'s removal from the sidewalk into the bedroom of Vasquez Martinez's home significantly increased the risk of harm to her and lessened the risk of detection. *See, e.g.*, *State v. Hardin*, 359 N.W.2d 185, 187, 190 (Iowa 1984) (affirming kidnapping conviction where, after the victim drove the defendant home from a bar, the defendant "hit the victim in the face, dragged her out of the vehicle, and forced her inside where he raped her"); *State v. Newman*, 326 N.W.2d 796, 801–02 (Iowa 1982) (concluding there was sufficient evidence of confinement when a student walking home from a friend's house was enticed into the defendant's truck, sexually assaulted, and then driven to a road where there were no houses); *State v. Knupp*, 310 N.W.2d 179, 182–83 (Iowa 1981) (finding sufficient evidence of confinement and removal where the "defendant pulled the victim into his vehicle, drove away before she could escape, and took her six or seven blocks to a point under a bridge" and then sexually assaulted her); *Bitzan*, 2013 WL 3273813, at *3–4 (finding kidnapping when defendant forced victim from the sink area to behind a stall in rest stop).

Considering the totality of the facts in the light most favorable to the trial court's decision, we find substantial evidence to support the second-degree kidnapping conviction.

**AFFIRMED.**